David J. GIEL, Appellant,

v.

STATE of Alaska, Appellee.

No. A–74.

Court of Appeals of Alaska.

June 8, 1984.

William J. Pauzauskie, Anchorage, for appellant.

Richard W. Maki, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

David Giel was convicted, based upon his no contest plea, of possession of cocaine, former AS 17.10.010. Judge Seaborn J. Buckalew sentenced Giel to five years with two years suspended. In entering his no contest plea, Giel reserved an appellate issue pursuant to *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974). We have considered the issue which Giel raises and affirm the judgment of the superior court.

On August 20, 1982, Anchorage police officers executed a search warrant on the residence of Michael McDonald. The police found cocaine and drug paraphernalia. After being warned of his *Miranda* rights, McDonald offered to make a statement on the conditions that his wife would not have to go to jail or be charged with possession of cocaine and that his cooperation would

be brought to the attention of the magistrate at the bail hearing, and the district attorney. McDonald named David Giel as a dealer, from whom he had purchased cocaine. He stated that Giel still had cocaine at his residence. The police used this information to obtain a search warrant; their search of Giel's residence yielded twelve ounces of cocaine. Giel was subsequently charged with possession of cocaine.

McDonald moved to suppress his confession and to dismiss the two charges of sale of cocaine which were based upon that confession. He contended that his statement was not voluntary because it was induced by his fear that the police would arrest his wife if he did not make a statement. The state responded to this motion by agreeing not to use McDonald's confession. Superior Court Judge Ralph Moody suppressed the confession and the state dismissed the two charges against McDonald which alleged that he sold cocaine.

Giel then filed a motion to suppress all of the evidence found in the search of his residence. Giel argued for suppression because the search warrant was based on a confession which the police had obtained illegally from McDonald. The state argued that Giel had no standing to move to suppress because his constitutional rights had not been violated. Judge Victor Carlson concluded that Giel had no standing to raise the violation of McDonald's rights. Giel now appeals this decision.

 In *Waring v. State,* 670 P.2d 357, 363 (Alaska 1983), the supreme court stated:

[W]e hold that a defendant has standing to assert the violation of a co-defendant's fourth amendment rights if he or she can show (1) that a police officer obtained the evidence as a result of gross or shocking misconduct, or (2) that the officer deliberately violated a co-defendant's rights.

[Footnotes omitted.]

In deciding Giel's case, we assume that McDonald should be considered a co-defendant for purposes of applying the *Waring* standard. We conclude that the language which we have quoted from *Waring* would apply to give Giel standing to assert the violation of a co-defendant's fifth amendment rights to the same extent that Giel could assert the violation of a co-defendant's fourth amendment rights.[1] However, we believe that Judge Carlson's conclusion that the police officers did not obtain McDonald's confession through gross or shocking misconduct is not clearly erroneous. The limited record in this case appears to support Judge Carlson's conclusion that the officers had a reasonable basis to believe that McDonald's wife could be arrested for possession of the cocaine found in the residence. The record also supports a conclusion that it was McDonald who first suggested to the police an arrangement whereby he would make a statement and his wife would not be arrested or charged.[2] Although the state was willing to concede that this arrangement made McDonald's statement involuntary and subject to suppression, we do not believe that this arrangement can be characterized as gross

---

1. In *Waring v. State,* 670 P.2d 357, 362 (Alaska 1983), the supreme court noted with approval the opinions of Justice Rabinowitz and Justice Connor in *Dimmick v. State,* 473 P.2d 616 (Alaska 1970). Those opinions would have applied a standard for standing similar to the *Waring* standard where a defendant attempted to have the court suppress evidence based on the violation of a co-defendant's fifth amendment rights. We conclude that the *Waring* rule concerning standing to assert a violation by the police of a co-defendant's rights extends to both fourth and fifth amendment violations.

2. McDonald and his wife have a son who was seventeen months old at the time of this incident. Giel argues, based on that record, that McDonald was concerned that his son would be charged with possession of cocaine or jailed. McDonald would obviously be concerned how his son would be cared for if both he and his wife were arrested. However, we agree with Judge Carlson that it is unreasonable to infer from the record that McDonald feared that his son would be charged with possession of cocaine or jailed.

or shocking misconduct on the part of the police.[3] We accordingly affirm the judgment of the superior court that Giel had no standing to raise the violation of McDonald's fifth amendment rights.

The conviction is AFFIRMED.

---

**3.** The supreme court in *Waring* did not specifically state what kind of conduct violating a co-defendant's rights would be considered "gross or shocking" police misconduct. We do know that if the police intentionally violated McDonald's rights in order to obtain evidence against Giel, Giel would have standing to assert the violation of McDonald's rights. 670 P.2d at 362–63. However, the record does not support a conclusion that the police intentionally violated McDonald's rights to obtain evidence against Giel, and it does not appear that Giel even raises this argument. We note, however, that in *Waring,* the supreme court did give an indication of what it would regard as gross or shocking police misconduct:

> We can conceive of circumstances which would lead to the application of the exclusionary rule to revocation of probation proceedings. *E.g., Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). In short, police misconduct which shocks the conscience, or is of a nature that calls for the judiciary, as a matter of judicial integrity, to disassociate itself from benefits derivable therefrom, would lead us to invoke the exclusionary rule.

670 P.2d at 362, quoting *State v. Sears,* 553 P.2d 907, 914 (Alaska 1976).

In *Wortham v. State,* 666 P.2d 1042 (Alaska 1983), the supreme court had to decide what evidence could be used in a perjury prosecution. The court had to interpret Alaska Rule of Evidence 412(2) which stated in part that "evidence illegally obtained may be admitted in a prosecution for perjury ... if the prosecution shows that the evidence was not obtained *in substantial violation of rights.*" [Emphasis added.] In interpreting the emphasized language, the supreme court adopted language from a concurring opinion by Judge Singleton in *Wortham v. State,* 657 P.2d 856, 858 (Alaska App.1983)

> [T]he drafters of the rule did not intend to bar the introduction of evidence obtained in violation of the fourth and fifth amendments, and their Alaska counterparts, unless the violation of rights was such that it independently violated due process. *Rochin v. California,* 342 U.S. 165 72 S.Ct. 205, 96 L.Ed. 183 (1952). In the absence of coercion, violence or brutality to the person, I would admit evidence obtained in violation of the fourth and fifth amendments in perjury prosecutions. *See Irvine v. California,* 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561 (1954) (applying the *Rochin* standard to a fact situation similar but more eggregious than the instant one).

*Wortham,* 666 P.2d at 1043–44. It appears to us that Judge Carlson applied the *Rochin* standard to this case. We agree that the *Rochin* standard is the correct standard and conclude that Judge Carlson did not err in finding that the police conduct was not gross or shocking.