**Terry L. CHRISTIANSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1570.**

Court of Appeals of Alaska.

April 10, 1987.

Dennis P. James, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Terry Christianson was convicted, following a jury trial, of theft in the first degree, a class B felony, and unlawful possession, a class C felony. AS 11.46.120; AS 11.46.270(b)(1). Christianson appeals, arguing that Judge Mark C. Rowland erred in denying his motion to suppress. We affirm.

On April 29, 1985, a Peterbilt truck was stolen in Wenatchee, Washington. The truck was worth approximately $80,000.

Clyde James, an insurance adjuster, investigated the theft in Alaska. James was informed by Jerry Zimmerman, who had a truck repair shop in the same building as a shop run by Christianson, that Christianson had traded a blue and white Chevrolet pickup truck to Dan Kapalo [1] for the engine out of the stolen truck. Zimmerman stated that the stolen engine was now in a 1975 red Peterbilt truck. Zimmerman stated that this truck was driven by Bill Fisher, but that Fisher was probably not involved in any offense.

James immediately reported this information to the police. The following day James met with Investigator Lyle Davis, who was in charge of the auto theft unit of the Anchorage Police Department. James and Davis compared information about the case. James told Davis what Zimmerman had told him. Later, James and Davis went to Christianson's shop where the 1975 Peterbilt truck was reportedly located. They eventually spotted the truck parked outside the shop. Subsequently, the truck was driven away by Bill Fisher. James and Davis followed Fisher, and stopped him on the Seward highway. According to Davis, he told Fisher that he suspected that there were stolen parts on the truck and asked Fisher for permission to search the vehicle. Fisher stated that he would cooperate, and signed a consent to search form. Investigator Davis and James found that the serial numbers of two parts in the engine compartment were identical to those from the stolen truck. However, the serial number was missing from the engine. The truck was then impounded.

On appeal, Christianson points out that in *Coleman v. State*, 553 P.2d 40, 46 (Alaska 1976), the supreme court held that an investigatory stop could be made "where the police officer has a reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred...." Christianson notes that his case involves a theft which took place more than three months before the stop. He argues that this should be insufficient to support a finding that "imminent

1. The transcript of the proceedings below uses the spelling "Cappello." However, Christian-

son's brief and the indictment issued in this case use the spelling "Kapalo."

public danger exist or serious harm to persons or property has recently occurred...." He also appears to argue that the police had insufficient information to justify the stop.

The restrictions which *Coleman* places on investigatory stops are "aimed at preventing unreasonable interference with the 'person' of a suspect." *Gibson v. State,* 708 P.2d 708, 711 (Alaska App.1985). Therefore, in the instant case, the *Coleman* restrictions were intended to protect Fisher from an unreasonable investigative stop of his person.

 We conclude that Christianson does not have standing to raise the issue of the investigative stop of Fisher. In *Waring v. State,* 670 P.2d 357, 360–63 (Alaska 1983), the supreme court indicated that a defendant had standing to assert the violation of a co-defendant's rights only in very limited situations. The *Waring* case specifically involved defendants who wanted to suppress evidence which resulted from an illegal investigative stop of co-defendants. In *Waring* the court stated:

> [A] defendant has standing to assert the violation of a co-defendant's fourth amendment rights if he or she can show (1) that a police officer obtained the evidence as a result of gross or shocking misconduct, or (2) that the officer deliberately violated a co-defendant's rights.

670 P.2d at 363 (footnotes omitted). Christianson has not argued that there was shocking misconduct or that the police deliberately violated Fisher's rights and the record does not suggest any misconduct of

this magnitude by the police. Although Fisher was not a co-defendant, there does not appear to be any reason to apply a different standing requirement in this case than we would apply if Fisher were a co-defendant. The reasons which the supreme court gave for applying a standing requirement to co-defendants also apply to this case.[2]

 Once we determine that Christianson did not have standing to assert that the police made an illegal investigative stop of Fisher, Christianson's appeal must fail. Christianson does not seem to contend that the trial court erred in finding that Fisher consented to looking under the hood of the truck. The evidence as to whether Fisher gave a valid consent was conflicting, but there is sufficient evidence to support the trial court's finding of consent. *See Brown v. State,* 684 P.2d 874, 880 (Alaska App.1984). Fisher was the regular driver of the truck, and there does not appear to be any reason why he could not consent to the search of the engine compartment. 2 W. LaFave, *Search and Seizure* § 8.6(a), at 760–65 (1978); *Ingram v. State,* 703 P.2d 415, 424–26 (Alaska App.1985), *aff'd,* 719 P.2d 265 (Alaska 1986). We accordingly hold that the trial judge did not err in denying Christianson's motion to suppress.

The judgment of the superior court is AFFIRMED.

---

**2.** In *Waring,* the supreme court specifically expressed no opinion on whether a defendant could assert a violation of the fourth amendment rights of persons other than co-defendants or co-suspects. 670 P.2d at 363 n. 11. In *Waring,* in establishing the standing requirement, the court reasoned:

> [W]e believe that law enforcement officers generally conduct searches and seizures of an individual's person or property for the purpose of prosecuting that individual, rather than for the purpose of prosecuting a co-defendant. If a search or seizure were unlawful, any resulting evidence would be excluded at the trial of the defendant whose rights were violated. To apply the exclusionary rule a second time in a co-defendant's trial would not serve any additional deterrent purpose.

*Id.* at 361–62 (footnote omitted).

Although no evidence was suppressed in the instant case, there was certainly a threat of suppression if the police violated Fisher's rights and Fisher was involved. On the facts of this case, any holding that Fisher's rights were violated would turn on a determination by this court that the police did not have reasonable suspicion that "imminent public danger exist[ed] or [that] serious harm to persons or property [had] recently occurred...." Whether the facts of this case would fit within that phrase would involve a difficult case of first impression for this court. We conclude that allowing Christianson to have standing to assert Fisher's rights would "not serve any additional deterrent purpose."