Daniel FRAIMAN, Appellant,

v.

STATE of Alaska, DEPARTMENT OF ADMINISTRATION, DIVISION OF MOTOR VEHICLES, Appellee.

No. S–10026.

Supreme Court of Alaska.

June 14, 2002.

25. *Merrill,* 368 P.2d at 547–48 n. 4.

Max D. Garner, Birch, Horton, Bittner & Cherot, Anchorage, for Appellant.

Timothy W. Terrell, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

### OPINION

FABE, Chief Justice.

## I.   INTRODUCTION

The Division of Motor Vehicles (DMV) administratively suspended Daniel Fraiman's driver's license for refusal to take a chemical breath test following Fraiman's arrest for eluding an officer.  Because Fraiman was arrested while in the cabin of a friend, he attempted to raise a defense based on an alleged Fourth Amendment violation.  We agree with the hearing officer and the superior court that Fraiman did not have standing to raise his Fourth Amendment concerns, and we consequently affirm the decision to suspend his license.

## II.   FACTS AND PROCEEDINGS

Just after midnight on May 20, 1999, Daniel Fraiman, age eighteen, was driving west on East End Road in Homer.  Driving in the other direction, Alaska State Trooper David Tracy noticed that the taillights on Fraiman's red Subaru were out.  Trooper Tracy turned on his overhead lights, but Fraiman did not pull over.  Trooper Tracy followed Fraiman to the house of Kathy Morton on Shelby Kay Street.  Trooper Tracy knocked on the door of the house, and asked Morton if she knew the identity of the driver of the red Subaru.  Morton replied that she did not but that it might be a friend of her son; she then went back into the house.

Trooper Tracy called in the license plate on the Subaru and learned that it was registered to Douglas Fraiman, the father of Daniel Fraiman.  Upon receiving this information, Trooper Tracy asked Morton if he could come inside her house to look for Douglas Fraiman.  Morton refused.  When Trooper Tracy then stated his plan to seek a search warrant, Morton allowed him to enter the house.  The only other person Trooper Tracy found in the house was a friend of Morton.  Because Morton and the friend appeared to have been recently awakened by his visit, Trooper Tracy ruled them out as drivers of the red Subaru.  In his search of the house, Trooper Tracy noted that there did not appear to be a place where Morton's son stayed.  Trooper Tracy asked Morton about this, and she replied that her son and daughter slept in a cabin in back of the house.  Trooper Tracy asked Morton to lead him to the cabin and she agreed.

Morton knocked loudly on the cabin door and announced that a state trooper was looking for the driver of the Subaru parked in the driveway.  After a brief delay, Morton's

twenty-year-old daughter answered the door and informed Trooper Tracy that her brother and his friend were in the loft, which could be reached via ladder through a trap door. Kathy Morton knocked on the trap door and, after the trap door opened, asked for the driver of the Subaru to come out. When this did not happen, Trooper Tracy climbed into the loft and discovered Daniel Fraiman crouched in a corner. Although Trooper Tracy did not have Kathy Morton's express permission to enter the cabin, she did not object to his entry.

Trooper Tracy arrested Daniel Fraiman for eluding an officer.[1] After taking him to the squad car, Trooper Tracy noticed that Fraiman had an odor of alcohol on his breath and that his speech was slurred. Trooper Tracy asked Fraiman to perform a variety of field sobriety tests, including a preliminary breath test,[2] at which point the trooper determined that Fraiman was under the influence and took him to the Homer jail. Once there, Fraiman refused to submit to a chemical breath test, causing Trooper Tracy to revoke his driver's license under Alaska's implied consent law.[3]

Fraiman requested and received a review hearing before the Division of Motor Vehicles. The hearing took place on June 29, 1999 before hearing officer Rebecca Janik. Fraiman challenged the license suspension on the grounds that Trooper Tracy lacked probable cause to make an arrest and that the arrest occurred as the result of an illegal warrantless search. Fraiman requested that his refusal to take the chemical breath test be suppressed, but Janik stated that she did not think Trooper Tracy's entry into the cabin was within the scope of the administrative hearing. Janik further stated, though, that even if the issue was within the scope of

the hearing, it was her belief that Fraiman was not an "invited guest" in the cabin and thus lacked standing to raise his Fourth Amendment argument. Janik also found that Trooper Tracy had reasonable grounds to arrest Fraiman for driving a vehicle while intoxicated.

Fraiman appealed to the superior court, arguing primarily that the hearing officer erred in finding that AS 28.15.166(g) bars motorists from seeking suppression of evidence in administrative hearings. The superior court did not reach this argument, affirming the hearing officer on the ground that Fraiman lacked standing to challenge Trooper Tracy's allegedly illegal entry into the cabin. The superior court further found that Trooper Tracy had probable cause to arrest Fraiman both for eluding an officer and for driving while intoxicated. Fraiman appeals.

## III. STANDARD OF REVIEW

Courts are to review administrative revocations of drivers' licenses for driving while intoxicated under the standards set forth in AS 28.15.166(m), which provides: "The court may reverse the department's determination if the court finds that the department misinterpreted the law, acted in an arbitrary and capricious manner, or made a determination unsupported by the evidence in the record."[4] The present case involves questions of both law and fact.

The standard of review for issues of statutory interpretation is the "substitution of judgment" test, under which we conduct an independent review.[5] This standard of review is applied to agency decisions "where the questions of law presented do not involve

---

1. AS 28.35.182(b) ("A person commits the offense of failure to stop at the direction of a peace officer in the second degree if the person, while driving or operating a vehicle or motor vehicle or while operating an aircraft or watercraft, knowingly fails to stop as soon as practical and in a reasonably safe manner under the circumstances when requested or signaled to do so by a peace officer.").

2. This test revealed that Fraiman had a blood alcohol level of .086.

3. *See* AS 28.15.165; AS 28.35.031.

4. *Saltz v. State, Dep't of Pub. Safety,* 942 P.2d 1151, 1152 n. 2 (Alaska 1997) (citing *Miller v. State, Dep't of Pub. Safety,* 761 P.2d 117, 118 n. 2 (Alaska 1988)).

5. *Wik v. State, Dep't of Pub. Safety,* 786 P.2d 384, 385–86 (Alaska 1990).

agency expertise."[6] Under this standard, "a reviewing court [can] substitute its own judgment for that of the agency's, even if the agency's decision had a reasonable basis in law."[7] In such cases, we exercise independent review of the superior court's decision, "as the superior court [acts] as an intermediate court of appeal."[8] For determinations of fact by an administrative agency, we apply the "substantial evidence" test, under which "the reviewing court determines whether the findings are supported by such evidence as a reasonable mind might accept as adequate to support a conclusion."[9]

## IV. DISCUSSION

■ Fraiman argues that the hearing officer erroneously interpreted AS 28.15.166(g) to bar his legal challenge to the admissibility of evidence that he maintains was obtained illegally. Fraiman contends that precedent exists for expanding the scope of an administrative license hearing beyond that expressly permitted by AS 28.15.166(g).[10] Fraiman relies on *Javed v. State, Department of Public Safety*,[11] in which we held that due process required a determination at the license revocation hearing of whether or not the accused was actually driving the car, even though this issue falls outside of the apparent scope of AS 28.15.166(g). Although the hearing officer disagreed with Fraiman's analysis on this point and found the issue of whether Trooper Tracy conducted an illegal search to be "be-

yond the scope of this hearing," she made an alternate finding that Fraiman "[did] not have standing to raise an issue of illegal search of someone else's home." Because hearing officer Janik made findings on Fraiman's Fourth Amendment claims, despite believing them to be beyond the scope of the hearing, we need not resolve the question of whether claims of illegal search and seizure are appropriately raised at administrative hearings.

Both the hearing officer and the superior court concluded that Fraiman did not have standing to sue for the allegedly illegal search of someone else's home. We agree. The United States Supreme Court has established that "absent consent or exigent circumstances" police cannot search for a fugitive in the house of a third party without a warrant based on evidence that the fugitive is expected to be in the house of the third party.[12] More specifically touching on the present case, the Supreme Court in *Minnesota v. Olson* ruled that overnight guests have a legitimate expectation of privacy.[13] Consequently, an overnight guest can invoke the protections of the Fourth Amendment against a warrantless arrest while staying in the house of a friend.[14] *Minnesota v. Carter*, however, limited the Fourth Amendment protection based on a reasonable expectation of privacy to those who possess a "degree of acceptance into the household."[15]

---

**6.** *Earth Resources Co. of Alaska v. State, Dep't of Revenue*, 665 P.2d 960, 965 (Alaska 1983).

**7.** *Id.*

**8.** *Haynes v. State, Dep't of Pub. Safety*, 865 P.2d 753, 754 (Alaska 1993).

**9.** *Borrego v. State, Dep't of Pub. Safety*, 815 P.2d 360, 363 (Alaska 1991).

**10.** That statute limits the issues at the administrative hearing to (1) whether the law enforcement officer had reasonable grounds to believe that the person was operating a motor vehicle that was involved in an accident causing death or serious physical injury or was operating a vehicle while intoxicated, and (2) whether the person either failed or refused to take a chemical breath test.

**11.** 921 P.2d 620, 624 (Alaska 1996).

**12.** *Steagald v. United States*, 451 U.S. 204, 213, 216, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).

**13.** 495 U.S. 91, 99, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). The requirement of an expectation of privacy comes from *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) ("[The] capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.") (citing *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

**14.** *Olson*, 495 U.S. at 99–100, 110 S.Ct. 1684. The state court in *Olson* had found an absence of exigent circumstances that might otherwise have justified arrest. *Id.* at 100, 110 S.Ct. 1684.

**15.** 525 U.S. 83, 90, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (holding that a person who was in an apartment for the purpose of packaging cocaine, which the Court likened to a business transaction, could not have a legitimate expectation of privacy).

In concluding that Fraiman was not an invited overnight guest, the hearing officer relied on the facts presented at the hearing, especially that the car that Fraiman was driving was followed to the residence and that Fraiman was discovered fully clothed while his friend and the friend's sister were in sleeping attire. Indeed, Janik concluded that Fraiman's conduct "was of a person hiding from the police in someone else's home." The finding that Fraiman was not an overnight guest thus places him within the more limited framework of *Minnesota v. Carter*, as opposed to that of *Minnesota v. Olson*. Because Fraiman could not have had a "legitimate expectation of privacy" in the cabin,[16] he does not have standing to assert third-party Fourth Amendment protections.[17]

Alaska law confirms this conclusion. In *Waring v. State*, we held that standing to assert a Fourth Amendment violation of a co-defendant's rights exists only where the defendant can show that the police officer "obtained the evidence as a result of gross or shocking misconduct, or . . . deliberately violated a co-defendant's rights."[18] Neither of these situations exist in the present case. As the superior court noted, Fraiman did not contend that Trooper Tracy's actions constituted "gross or shocking misconduct." The superior court further held that Trooper Tra-

cy's actions were not "a deliberate violation of the Mortons' right to be free from unreasonable searches of their cabin." We agree with the superior court that Fraiman did not fall into either of the standing exceptions listed in *Waring*.

The "deliberate violation" discussed in *Waring* is to be viewed in terms of the person whose rights are directly violated, not the person asserting the exclusionary rule.[19] The record does not suggest that Trooper Tracy's conduct was gross or shocking toward the Mortons. Trooper Tracy's conduct was, on the whole, routine for an officer pursuing a suspect. Despite the possible objection to subtle pressure on Kathy Morton to allow a search of her house, Trooper Tracy's conduct did not rise to the level where it would "shock the conscience."[20]

Neither did Trooper Tracy deliberately violate the Mortons' rights. Trooper Tracy had obtained permission from Kathy Morton to search her residence. This permission reasonably extended to the cabin where other family members slept, even though the cabin was not attached to the house: Kathy Morton led Trooper Tracy to the cabin and assisted in the search for the driver of the red Subaru.[21] In short, there is nothing to suggest that Trooper Tracy deliberately vio-

**16.** *Id.* at 91, 119 S.Ct. 469.

**17.** *Id.*

**18.** 670 P.2d 357, 363 (Alaska 1983). The court in *Waring* stated that it "express[es] no opinion as to whether a defendant can assert the violation of the fourth amendment rights of persons other than co-defendants or co-suspects." *Id.* at 363 n. 11. Given the subsequent United States Supreme Court opinions in *Olson* and *Carter*, though, this question appears to have been answered. There are also Alaska cases suggesting that the co-defendant standing established in *Waring* applies to any third party. *See Samson v. State*, 919 P.2d 171, 174 (Alaska App.1996) (contemplating, but rejecting, the possibility of standing for search of one's utility records); *State v. J.R.N.*, 861 P.2d 578, 580 n. 6 (Alaska 1993) (holding that a minor cannot assert the standing rights of a parent absent the exceptions listed in *Waring*).

**19.** *See Bright v. State*, 826 P.2d 765, 774 (Alaska App.1992); *Christianson v. State*, 734 P.2d 1027, 1029 (Alaska App.1987); *Giel v. State*, 681 P.2d 1364, 1367 n. 3 (Alaska App.1984).

**20.** *See Giel*, 681 P.2d at 1367 n. 3 (commenting that *Waring* does not specifically establish criteria for gross or shocking behavior but that the court did invoke a "shocks the conscience" standard).

**21.** *See Care v. United States*, 231 F.2d 22, 25 (10th Cir.1956) (holding that Fourth Amendment protections "apply to buildings within the curtilage [of a farm residence] which may include a garage, a barn, a smokehouse, a chicken house or similar property. Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family."); *Stuart v. State*, 698 P.2d 1218, 1221 (Alaska App.1985) (holding that metal sheds on a property were within the curtilage of the home); *Ingram v. State*, 703 P.2d 415, 427 (Alaska App.1985) (holding that a storage shed connected to a four-plex was within the curtilage of the four-plex).

lated the Mortons' rights. Therefore, we agree with hearing officer Janik and the superior court that Fraiman did not have standing to assert a violation of the Mortons' Fourth Amendment rights.

Fraiman also argues that Trooper Tracy did not have probable cause to arrest him for eluding an officer. Fraiman claims that the evidence was insufficient to show that he *"knowingly"* failed to stop once signaled to do so, primarily due to the distance between himself and Trooper Tracy.[22] The test for probable cause is whether a reasonable person would believe that an offense had been committed by the defendant.[23] The issue of probable cause was addressed by hearing officer Janik, who found Fraiman's claim that he did not know he was being pursued to lack credibility.[24] The finding that Tracy had probable cause to arrest Fraiman for eluding him was affirmed by the superior court. Under the applicable "substantial evidence" test,[25] it is clear that there was sufficient evidence to support the conclusion that Trooper Tracy had probable cause to arrest Fraiman for eluding him. We concur with this conclusion and therefore affirm the findings of the hearing officer and the superior court.

## V. CONCLUSION

Because Trooper Tracy had probable cause to arrest Daniel Fraiman and because Fraiman did not have a reasonable expectation of privacy in the Mortons' cabin, Fraiman does not have standing to raise a Fourth Amendment claim at his driver's license revocation hearing. We AFFIRM the decisions of hearing officer Janik and the superior court.

---

22. AS 28.35.182(b) (emphasis added).

23. *State v. Grier,* 791 P.2d 627, 632 n. 3 (Alaska App.1990) ("Where a person of reasonable caution would be justified in the belief that an offense has been committed and the defendant committed it, probable cause is established even though the facts known to the officer could also be reconciled with innocence.").

24. Janik did at one point state that the issue of probable cause was "not an issue in this hearing," but as with the standing issue, the factual findings provided were sufficient to reach the conclusion that probable cause existed.

25. *Borrego v. State, Dep't of Pub. Safety,* 815 P.2d 360, 363 (Alaska 1991).