NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter*.  *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska  99501*
*Fax:  (907) 264-0878*
*E-mail:  corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

STATE OF ALASKA,

Appellant,

v.

TERRA L. ADAMS,

Appellee.

Court of Appeals No. A-12377
Trial Court No. 1KE-14-802 CR

O P I N I O N

No. 2612 — August 3, 2018

Appeal from the Superior Court, First Judicial District, Ketchikan, Trevor N. Stephens, Judge.

Appearances:  Elizabeth T. Burke, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards and Jahna Lindemuth, Attorneys General, Juneau, for the Appellant.  Galen Paine, Law Office of Julie Willoughby, Juneau, under contract with the Office of Public Advocacy, for the Appellee.

Before:  Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

---

[*]     Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

The State appeals the superior court's suppression of evidence in the prosecution of Terra L. Adams for the unlawful distribution of oxycodone.

According to the Alaska State Troopers' investigation, Adams would use other people — "runners" or "mules" — to transport oxycodone tablets from other states to Alaska. The State Troopers identified Pamela Helgesen as one of these "runners".

In December 2014, investigators received information that Adams had used airline miles to purchase a round-trip ticket for Helgesen from Ketchikan to Seattle and back. The officers obtained a warrant to search Helgesen's person and property for drugs, and they waited for her return to Ketchikan.

Upon Helgesen's arrival at the Ketchikan airport, two officers intercepted her and informed her of the search warrant. During their conversation with Helgesen, the officers asked a number of questions about Helgesen's involvement in transporting oxycodone for Adams.

Helgesen initially denied any involvement in Adams's drug activities, but Helgesen eventually made statements that implicated both herself and Adams in the illicit distribution of oxycodone. After making these statements, Helgesen told the officers that she did not wish to talk further. However, Helgesen agreed to assist the officers by sending a text message to Adams — a text message stating that she (Helgesen) had made it back to Ketchikan, and that she would meet Adams "on the other side at the ticket booth" and give her the oxycodone tablets.

Adams responded to Helgesen's text, saying that she was on her way. The officers waited for Adams at the rendezvous location, and they arrested her shortly after she arrived. Adams was subsequently indicted for second-degree controlled substance misconduct, and for conspiracy to commit this crime.

Following Adams's indictment, her attorney asked the superior court to suppress all evidence stemming from Helgesen's text message to Adams. In particular,

the defense attorney sought suppression of Adams's reply that she was "on her way", as well as the fact that Adams subsequently arrived at the airport and proceeded to the rendezvous location, and the statements that Adams made when she was contacted by the officers.

Adams's attorney argued that Adams was entitled to the suppression of this evidence because the officers violated *Helgesen's* rights under *Miranda v. Arizona*[1] when they questioned her at the airport — and that Helgesen's text message to Adams was the tainted fruit of this *Miranda* violation. Thus, according to Adams's attorney, all the evidence flowing from that text message should be suppressed.

Under federal law, a criminal defendant lacks standing to seek suppression of evidence obtained through a police violation of someone else's constitutional rights.[2] But Alaska law recognizes a limited exception to this lack-of-standing rule. In *Waring v. State*, 670 P.2d 357, 363 (Alaska 1983), our supreme court held that even though criminal defendants normally lack standing to complain if the police violate someone else's constitutional rights, a defendant in Alaska *can* assert a violation of another person's constitutional rights if the police engage in a "gross or shocking" violation of rights, or if the police deliberately violate another person's rights for the sole purpose of obtaining evidence against the defendant.[3]

---

[1]   384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[2]   *See Rakas v. Illinois*, 439 U.S. 128, 132-34; 99 S.Ct. 421, 424-25; 58 L.Ed.2d 387 (1978).

[3]   *Waring*, 670 P.2d at 363 n.11; *Fraiman v. Division of Motor Vehicles*, 49 P.3d 241, 245 n. 18 (Alaska 2002) (declaring that even though the holding in *Waring* was limited to the intentional violation of a co-defendant's rights, a defendant in Alaska has standing to assert the intentional violation of any third person's rights).

In Adams's case, the superior court granted Adams's suppression motion under the first of these rationales: The superior court found that the officers did not intentionally violate Helgesen's *Miranda* rights, but the court found that the officers' unintended violation of Helgesen's *Miranda* rights was "egregious".

The superior court based this finding of egregiousness on the fact that the officers continued to engage in conversation with Helgesen after she "clearly stated that she did not want to talk further".

The court acknowledged that, after Helgesen said this, the investigators "did attempt to shift the focus [of the conversation]" — no longer "questioning Ms. Helgesen [about her activities]" but rather "seeing if she would be willing to text Ms. Adams." The court characterized the investigators' actions as "attempting, at least [to] some degree, to honor [Helgesen's] request".

But the court then noted that when the investigators asked Helgesen if she would be willing to send the text message to Adams, they told her that she "could help herself by doing so", and that if she decided not to send the text to Adams, "her lack of cooperation would be noted". The court further noted that, when the officers talked to Helgesen about what she should say in her text message to Adams, the discussion returned to Helgesen's "drug mule activities".

Based on these circumstances, the superior court concluded that the officers' violation of Helgesen's *Miranda* rights was "egregious" in the sense that the violation "would have been apparent to any reasonable police officer". And based on this conclusion, the superior court ruled that the State was barred from using any of the evidence obtained against Adams after the point when Helgesen told the officers that she wanted to stop talking to them.

The State asked the superior court to reconsider this ruling. In its motion for reconsideration, the State argued that the *Waring* category of "gross or shocking"

violations of constitutional rights did not include all violations that would be apparent to a reasonable officer. Instead, citing this Court's 1984 decision in *Giel v. State*, the State argued that *Waring*'s phrase "gross or shocking" applied to a more limited set of circumstances — circumstances where the police misconduct "shocks the conscience", or where it is "of a nature that calls for the judiciary, as a matter of judicial integrity, to disassociate itself from benefits derivable therefrom" — such as situations where the police resort to unlawful "coercion, violence, or brutality".[4]

Although the superior court conceded that this Court's decision in *Giel* "[could] be read to support the State's position", the superior court declared that it was "not convinced" that the State's interpretation of *Waring* was correct.

The court therefore re-affirmed its earlier ruling that, under *Waring*, Adams had standing to assert the violation of Helgesen's *Miranda* rights so long as that violation would have been obvious to a reasonable officer.

The State now appeals the superior court's ruling. We agree with the State that the superior court misinterpreted the scope of *Waring*.

As we have explained, the superior court declined to reconsider its ruling because the court was "not convinced" that this Court's decision in *Giel* was the proper interpretation of *Waring*. But in *Fraiman v. Division of Motor Vehicles*, 49 P.3d 241 (Alaska 2002), the supreme court expressly endorsed our view of *Waring*. Citing *Giel*, the supreme court declared that the test for vicarious standing under *Waring* is whether the police misconduct "[rose] to the level where it would 'shock the conscience.'" *Id.* at 245 & n. 20.

---

[4]   *See Giel v. State*, 681 P.2d 1364, 1367 n. 3 (Alaska App. 1984).

When we apply this legal test to the facts of Adams's case as found by the superior court, we conclude that Adams does not have vicarious standing to assert the violation of Helgesen's *Miranda* rights.

As the superior court acknowledged, as soon as Helgesen stated that she did not wish to answer further questions, the investigators stopped asking questions about Helgesen's involvement in drug trafficking. Instead, they "attempt[ed] to shift the focus ... [to whether Helgesen] would be willing to text Ms. Adams." The court found that the investigators' shift in focus was, in fact, an "attempt[] ... to honor [Helgesen's] request".

The superior court rightly criticized the officers because, when the officers were trying to decide how to draft the text message that Helgesen would send to Adams, they asked Helgesen more questions about her activities as a drug courier.

But under these circumstances, even though the officers may have violated Helgesen's *Miranda* rights, the officers' conduct does not "shock the conscience" — nor does this conduct rise to the level where, as a matter of judicial integrity, the courts must disassociate themselves from the text message that Helgesen sent to Adams, and from the evidence that was obtained when Adams responded to that text message.

For these reasons, we REVERSE the decision of the superior court, and we reinstate the indictment against Adams.