81 F.3d 472
 Joyce BONNER, Plaintiff-Appellee,
v.
D.R. ANDERSON, Deputy, and in his individual capacity,
Defendant-Appellant,
and
Stan Beger, Captain, and in his individual capacity; Frank
Cecil, in his individual capacity, Defendants.
 No. 95-1705.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 30, 1995.
Decided April 17, 1996.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge. (CA-94-578).
 ARGUED: John Adrian Gibney, Jr., Shuford, Rubin & Gibney, P.C., Richmond, Virginia, for Appellant. Gerald Thomas Zerkin, Gerald T. Zerkin & Associates, Richmond, Virginia, for Appellee. ON BRIEF: Melanie A. Hopper, Robert Godfrey, Gerald T. Zerkin & Associates, Richmond, Virginia; John B. Boatwright, III, Boatwright & Linka, Richmond, Virginia, for Appellee.
 Before WILKINSON, Chief Judge, HALL, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 Dismissed by published opinion. Senior Judge BUTZNER wrote the majority opinion, in which Judge HALL joined. Chief Judge WILKINSON wrote a dissenting opinion.
 OPINION
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Claiming qualified immunity, D.R. Anderson, a deputy sheriff in Caroline County, Virginia, appeals the district court's interlocutory order that denied his motion for summary judgment. Because the pretrial record discloses a genuine issue of material fact, Anderson may not appeal. See Johnson v. Jones, --- U.S. ----, ----, 115 S.Ct. 2151, 2159, 132 L.Ed.2d 238 (1995).
 
 
 2
 * Anderson obtained a warrant to search Helen Mealey's residence for "Drugs, U.S. Currency or Drug Paraphernalia." Anderson noted as the probable cause for the search: "A confidential reliable informa[n]t was in the residence and saw crack cocaine and a large amount of money in the past 72 hours." Mealey's residence had a reputation as a "crack house." Prior police raids revealed a setting in which drug trading was common and guns were sometimes present. Anderson had been there five or six times with search warrants. Although the deputies had never been attacked, a man had been shot on the premises some time in the past. The sheriff's department had received calls about shootings and reports of drive-by shootings at the house. Also, the police were informed that a gang that allegedly frequented the house had threatened the police.
 
 
 3
 Soon after midnight, three or four police cars, carrying six officers, stopped in front of Mealey's house. Anderson testified that as the officers were getting out of their cars, he saw the front door open approximately one foot and then "shut back real quick."
 
 
 4
 The officers ran across the yard, with Anderson leading the way. Anderson testified that he yelled: "Police, search warrant" as he jumped onto the porch, and another officer testified that the entire raid team yelled: "Police, search warrant." Anderson hit the front door, pushing it open with his shoulder. Just before forcing the door, he saw a face through a window in the door. Anderson testified that he did not have time to stop. The door hit Joyce Bonner, a visitor, who suffered facial injuries.
 
 
 5
 The officers searched the residence. They found mostly drug paraphernalia, such as pipes and razor blades, and one plastic bag that may have contained drugs. They did not find any guns or other weapons, but they arrested an unarmed man who was outside the house.
 
 
 6
 Members of the Caroline County Police Department, upon arriving at a premises to be searched, strictly followed a "knock and announce" policy. As Anderson stated: "[W]e always knocked, and we always announced, 'Police, search warrant.' That's standard procedure." Anderson was corroborated by Deputy Frank Cecil: "Normal procedure is to knock and announce," and Captain Stanley Beger, Jr.: "The policy at the Sheriff's Office ... is that you knock and you announce...." Although the Caroline County Sheriff's Department had searched the Mealey residence on prior occasions, this search was the only one not preceded by a knock and announcement. Anderson testified about the exigency that to him justified entry without pausing to knock. His testimony was explicit:
 
 
 7
 Q Why did no one knock at the door?
 
 
 8
 A Because when we pulled up and got out of the vehicles, the front door came open, and it opened about that far (indicating with hands) and it shut back real quick.
 
 
 9
 Other officers corroborated him. Anderson testified that after he saw the door open and shut, he believed that the occupants had become aware of the raid. This alerted him to the possibility of danger to the officers or of concealment of evidence, for he knew that on previous occasions officers had found guns and drugs on the premises, and he was familiar with the occupants' reputation for violence. He also knew that on one raid the occupants had attempted to destroy the evidence of drugs.
 
 
 10
 Bonner contradicted Anderson. She claimed that nobody opened the door. Her testimony was also explicit:
 
 
 11
 Q Did you open the door?
 
 
 12
 A No.
 
 
 13
 Q Did you ever open the door?
 
 
 14
 A No.
 
 
 15
 Q Did anybody else who was there with you open the door?
 
 
 16
 A No.
 
 
 17
 She also testified that she did not hear the officers shout "Police, search warrant."
 
 
 18
 The district court denied Anderson's motion for summary judgment, saying the issue of qualified immunity "will resolve at trial."
 
 II
 
 19
 Anderson contends that Bonner lacks standing to sue under 42 U.S.C. § 1983. This statute permits suit by a citizen who has been deprived of a right secured by the Constitution by a person acting under color of state law. Bonner seeks to vindicate her Fourth Amendment right to be free from searches conducted without knock and announcement.
 
 
 20
 The knock and announcement requirement is an element of the Fourth Amendment reasonableness inquiry. Wilson v. Arkansas, --- U.S. ----, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). "The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application." Miller v. United States, 357 U.S. 301, 313, 78 S.Ct. 1190, 1198, 2 L.Ed.2d 1332 (1958). The rule is designed to satisfy three purposes: (1) protecting the safety of occupants of a dwelling and the police by reducing violence; (2) preventing the destruction of property; and (3) protecting the privacy of occupants. See, e.g., United States v. Zermeno, 66 F.3d 1058, 1062 (9th Cir.1995) (discussing federal knock and announce statute, 18 U.S.C. § 3109); Hall v. Lopez, 823 F.Supp. 857, 864 (D.Colo.1993). The first and third of these goals pertain to Bonner's claim.
 
 
 21
 Fourth Amendment rights are personal. Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 966-67, 22 L.Ed.2d 176 (1969). Consequently, Bonner cannot prevail on the basis of her host's possessory rights in the Mealey residence. Drawing upon Katz v. United States, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967), the Court has explained that the "capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Rakas v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). A subjective "expectation of privacy" is legitimate if "society is prepared to recognize [it] as 'reasonable.' " Katz, 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring). It follows that "arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control." Rakas, 439 U.S. at 143, 99 S.Ct. at 430.
 
 
 22
 The Court applied these principles in Minnesota v. Olson, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), in which it held that an overnight guest had a legitimate expectation of privacy in his host's residence. While the guest's extended visit was a factor in the Court's decision, the overnight aspect of the visit was used to illustrate the legitimacy of the guest's expectation of privacy that "was rooted in 'understandings that are recognized and permitted by society.' " It was for this reason that the guest could "claim the protection of the Fourth Amendment." Olson, 495 U.S. at 100, 110 S.Ct. at 1690 (citation omitted).
 
 
 23
 Bonner was not an overnight guest. Nevertheless, the principles that guided Olson are applicable to her. Bonner was a frequent visitor at the Mealey residence. Her half-sister had been raised there, and she previously lived in a neighboring building on the property. She often ran errands for Ms. Mealey, whom everyone called "Grandma," and she was in the house for this purpose when she was injured. We believe that Bonner's activities--visiting a neighbor and assisting the elderly--establish an expectation of privacy that is "recognized and permitted by society." Olson, 495 U.S. at 100, 110 S.Ct. at 1690. Bonner's situation differs from that of defendants, chronicled in the cases on which Anderson relies, who are unable to suppress evidence because they have no legitimate expectation of privacy in the place searched or any interest in the items seized.
 
 
 24
 For many actions involving governmental misconduct, a suit for damages "may offer the only realistic avenue for vindication of constitutional guarantees." Harlow v. Fitzgerald, 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982). We conclude that Bonner should be afforded the opportunity to vindicate the constitutional guarantees of the Fourth Amendment.
 
 III
 
 25
 Government officials who perform discretionary functions are entitled to qualified immunity from suit. They are shielded from civil liability to the extent that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. Generally, courts of appeals have jurisdiction over interlocutory appeals from denials of summary judgment on the basis of qualified immunity. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985). Yet this jurisdiction extends only to legal, not factual, issues. Johnson v. Jones, --- U.S. ----, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). To the extent that an interlocutory summary judgment determines factual issues, such as whether a pretrial record discloses a genuine issue of fact for trial, the summary judgment is not appealable. Johnson, --- U.S. at ----, 115 S.Ct. at 2159.
 
 
 26
 Application of the qualified immunity defense requires a court to answer two questions: (1) whether the constitutional right allegedly violated was clearly established, and (2) whether genuine issues of material fact exist regarding the officer's conduct. Johnson, --- U.S. ----, 115 S.Ct. 2151. The first inquiry presents a purely legal issue; the second calls for factual determinations. The constitutional right in question is to be defined narrowly, so that enforcement officials have advance notice as to what constitutes proper activity. See Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523 (1987).
 
 
 27
 A Fourth Amendment reasonableness standard governs the lawfulness of an entry by state officers executing a search warrant. One element of this standard, the "knock and announce" rule, requires police, absent exigent circumstances, to knock and announce their presence before entering premises to be searched. Wilson v. Arkansas, --- U.S. ----, ----, 115 S.Ct. 1914, 1919, 131 L.Ed.2d 976 (1995).
 
 
 28
 The knock and announce rule has a long heritage, dating back to the English common and statutory law of 1275. See Wilson, --- U.S. at ---- n. 2, 115 S.Ct. at 1917 n. 2. The principle was "woven quickly into the fabric of early American law," id. at ----, 115 S.Ct. at 1917, and satisfies the test of being a clearly established right. Of particular relevance to this case, the Caroline County Sheriff's Department uniformly followed a knock and announce policy. Anderson does not suggest that the "knock and announce" element of the reasonableness of a search is not clearly established. Instead, he relies on exigent circumstances. In the context of this case, this includes the opening of the door, which Anderson believed might increase the possibility of danger to the officers or of concealment of evidence.
 
 
 29
 The difficulty with Anderson's position at this stage of the proceedings pertains to the second element of qualified immunity. The disputes centering on whether the police announced their presence and, more importantly, whether someone opened and quickly shut the door to the Mealey house are genuine issues of material fact. The contradictory testimony of the two principal participants raises the issues. From the sheriff's department's uniform observance of the knock and announce standard and from Anderson's testimony about the reason he did not knock, it is apparent that the issues are material. One is compelled to draw the reasonable inference that Anderson would not have forcefully entered the house without first complying with the knock and announce rule if the door had not been opened and shut before the entry. In accordance with the precept of Johnson, --- U.S. at ----, 115 S.Ct. at 2159, we dismiss Anderson's appeal.
 
 
 30
 The dismissal, of course, is without prejudice because--as the district court noted--Anderson can press his claim at trial. In that forum, the questions of credibility can be resolved and due consideration can be given to Anderson's claim of exigent circumstances.
 
 
 31
 DISMISSED.
 
 WILKINSON, Chief Judge, dissenting:
 
 32
 Police officers who execute a search warrant, in the middle of the night, at a dangerous house known for its drug activity, are like the gladiator in Frank Stockton's famous short story, "The Lady, or the Tiger?" Just as Stockton's gladiator does not know whether a tiger or a lady waits behind the closed door he is forced to enter, police officers do not know what awaits them as they approach a residence. The majority determines, knowing what lay behind Helen Mealey's closed door, that exigent circumstances did not justify Officer Anderson's no-knock entry. But Officer Anderson had to make his judgment in an instant; we make ours after months of reflection. Because the majority minimizes, in hindsight, the real dangers Officer Anderson faced that night, I respectfully dissent.
 
 
 33
 The Supreme Court made clear in Wilson v. Arkansas, --- U.S. ----, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), that there is no "rigid rule of announcement that ignores countervailing law enforcement interests." Id. at ----, 115 S.Ct. at 1918. Rather, an officer's failure to knock and announce his presence is just one element of the Fourth Amendment's reasonableness inquiry. Id. As Fourth Circuit case law plainly indicated at the time of Anderson's actions, exigent circumstances can justify an entry without knock and announcement. Simons v. Montgomery County Police Officers, 762 F.2d 30, 32-33 & n. 1, 2 (4th Cir.1985), cert. denied, 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986). Exigent circumstances exist, as our precedents prior to this search revealed, where "there is a likelihood that the occupants will attempt to escape, resist, or destroy evidence." United States v. Jackson, 585 F.2d 653, 662 (4th Cir.1978); Mensh v. Dyer, 956 F.2d 36, 40 (4th Cir.1991) ("sound of running feet" justifies failure to knock and announce); United States v. Couser, 732 F.2d 1207, 1207-08 (4th Cir.1984) (risk of destruction of evidence justifies failure to knock and announce), cert. denied, 469 U.S. 1161, 105 S.Ct. 913, 83 L.Ed.2d 926 (1985). Officers must nearly instantaneously determine whether such exigent circumstances exist, and they often are forced to act on incomplete clues as to what will unfold when they execute a search warrant.
 
 
 34
 The undisputed facts make clear that Officer Anderson's actions were justified. Anderson arrived after midnight to execute a search warrant at a house well-known for its drug activity. The house was, as Anderson testified, a "drug haven" that the officers had raided numerous times, and where they had recovered both drugs and weapons. On one raid, for instance, the police seized two shotguns, a rifle, and a pistol. At least one individual was shot with a .45 at the house within the previous several years. And drive-by shootings there prompted numerous calls to the police. One officer testified that it was "common knowledge ... that you could encounter somebody with weapons there." In short, it was a place where, as Anderson stated, "there was always something [ ] to fear for your safety." Moreover, in previous police visits to the property, the occupants of the house had attempted to destroy evidence through a make-shift toilet, and those around the house fled when officers approached. Anderson knew all this when he stepped out of his police car after midnight on September 5, 1992.
 
 
 35
 It is true that the parties dispute exactly what happened on the night in question. While all the officers stated that they shouted "police, search warrant" as they approached the house, Bonner contends that she heard no such warning; she also asserts that no one opened and quickly shut the door of the house. But disagreement over these facts does not preclude the grant of summary judgment to Officer Anderson. Bonner does not dispute that a man was standing at the corner of the house, nor does she contradict one officer's testimony that he heard a commotion inside as he approached the house. Both these facts suggested to the officers that those inside the house knew of and were reacting to their approach. And the officers' experience indicated that, once those inside the house knew they were coming, the police could face physical danger, the destruction of evidence, or attempted flight. It may be true that on previous visits to the house officers had knocked and announced their presence; that past practice, however, does not graduate into a constitutional requirement for every execution of a search warrant. Under the circumstances presented on September 5, 1992, and given what he knew about the Mealey residence, Officer Anderson's actions did not violate a clearly established right. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).
 
 
 36
 The majority places police officers in harm's way. The door that opens next may hold the tiger. I would reverse the district court and grant Officer Anderson qualified immunity.