[No. A124598. First Dist., Div. Five. Apr. 12, 2011.]

THE PEOPLE, Plaintiff and Appellant, v.
DEEMARIO BOMONE MAGEE, Defendant and Respondent.

COUNSEL

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan, Amy Haddix and Alisha Carlile, Deputy Attorneys General, for Plaintiff and Appellant.

Nella Bertin, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION

SIMONS, J.—When defendant Deemario Bomone Magee noticed that police officers were approaching him, he avoided them by entering the home of a friend. Though the officers lacked a warrant, they followed defendant into the house and found him inside the bathroom trying to dispose of individually wrapped pieces of suspected cocaine base. The trial court suppressed the evidence discovered inside the house, but we reverse; defendant had no reasonable expectation of privacy in the home or the bathroom at the time of the officers' warrantless entry.

### FACTUAL BACKGROUND[1]

On September 13, 2008, at 7:48 p.m., Corporal Potts and three other officers of the Vallejo Police Department were patrolling near Mark Avenue

---

[1] This factual summary is based on the testimony at the preliminary hearing.

and Sawyer Street, a high-crime area known for narcotics trafficking. The officers were in an unmarked van and wore black police shirts and vests. Potts saw defendant walk from in front of a house on Mark Avenue (the Mark Avenue house) toward a car that appeared to slow as it drove down the street. Potts recognized defendant; the "word on the street" was that defendant was involved in selling illegal narcotics, and Potts knew that defendant had been arrested in 2004 for selling drugs to an undercover officer. When Potts had attempted to contact defendant months before, defendant ran into a house to avoid the contact.

The police officers exited the van. Defendant looked toward the officers and then turned and "jogged hurriedly" toward the Mark Avenue house. Potts called out, "Please stop. Come here, Deemario. Please stop." Defendant continued to move toward the house and, as Potts pursued him, defendant entered it. Potts knew from previous contacts with defendant that defendant did not live there; defendant had told Potts that his "grandmother" lived there.

Potts followed defendant into the house through an unlocked screen door and heard defendant close the bathroom door. The bathroom door was locked, and Potts kicked it open. Defendant was leaning over the toilet, flushing it. Inside the toilet was a bag containing "at least" 20 individually wrapped pieces of a white chalky substance that Potts believed to be cocaine base.

Potts reached over defendant in an unsuccessful attempt to retrieve the bag before it was flushed away. Defendant pushed Potts, and Potts punched defendant. After a struggle involving additional officers, defendant was handcuffed. The officers found on defendant a handgun with one bullet in the chamber and over $800 in cash; they found a gun magazine in the bathtub. The officers also searched and seized evidence from defendant's car, which was parked outside. Potts opined that defendant possessed the suspected cocaine base for the purpose of sale.

Grace Anderson, who lived with her mother and sister at the Mark Avenue house in September 2008, testified for the defense. She is close to defendant's parents and has known defendant for over 20 years. Defendant stopped by the Mark Avenue house when he was in the area, two or three times a week. He socialized with Anderson's mother, who loved defendant as a "grandson." He had permission to enter without knocking and to use the restroom. Defendant had never stayed overnight. On September 13, 2008, defendant had made arrangements with Anderson's niece to have his hair braided at the house.

## PROCEDURAL BACKGROUND

In a felony complaint, defendant was charged with possession of cocaine base for sale (Health & Saf. Code, § 11351.5) (count 1), with an enhancement

for being armed with a firearm (Pen. Code, § 12022, subd. (c)); possession of cocaine base while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a)) (count 2); possession of a concealed firearm (Pen. Code, § 12025, subd. (a)(2)) (count 3); and misdemeanor battery on a police officer (*id.*, § 243, subd. (b)) (count 4).[2]

Prior to the preliminary hearing, defendant filed a section 1538.5 motion to suppress the evidence discovered inside the Mark Avenue house, as well as the evidence seized from his car. At the end of the preliminary hearing, the magistrate granted the motion to suppress the evidence seized from the car,[3] denied the motion in all other respects, and held defendant to answer on the complaint. Thereafter, the People filed an information setting forth counts 1, 2 and 3 as stated in the complaint; count 4 was changed to charge defendant with resisting an executive officer (§ 69).

Subsequently, defendant filed a motion to set aside the information pursuant to section 995, on the ground that the magistrate erred in denying the suppression motion with respect to the evidence discovered in the Mark Avenue house. The trial court concluded the warrantless entry violated the Fourth Amendment to the United States Constitution and granted defendant's motion to set aside the information. The People filed a timely notice of appeal.

## DISCUSSION

### I. *Standard of Review*

"A criminal defendant is permitted to challenge the reasonableness of a search or seizure by making a motion to suppress at the preliminary hearing. [Citation.] If the defendant is unsuccessful at the preliminary hearing, he or she may raise the search and seizure matter before the superior court under the standards governing a section 995 motion. [Citation.]" (*People v. McDonald* (2006) 137 Cal.App.4th 521, 528–529 [40 Cal.Rptr.3d 422].) "In a proceeding under section 995, the superior court's role is similar to that of an appellate court reviewing the sufficiency of the evidence to sustain a judgment. [Citation.] The superior court merely reviews the evidence; it does not substitute its judgment on the weight of the evidence nor does it resolve factual conflicts. [Citation.]" (*Id.* at p. 529.) In this appeal from the grant of defendant's motion under section 995, this court "must draw all presumptions

---

[2] All further undesignated section references are to the Penal Code.

[3] In this appeal, the People do not challenge the magistrate's ruling granting defendant's motion to suppress the evidence seized from his car.

in favor of the magistrate's factual determinations, and we must uphold the magistrate's express or implied findings if they are supported by substantial evidence. [Citations.]" (*McDonald*, at p. 529.) "We judge the legality of the search by 'measur[ing] the facts, as found by the trier, against the constitutional standard of reasonableness.' [Citation.] Thus, in determining whether the search or seizure was reasonable on the facts found by the magistrate, we exercise our independent judgment. [Citation.]" (*Ibid.*)

## II. *The Critical Issue in This Case Is Whether Defendant Had a Legitimate Expectation of Privacy at the Time of the Warrantless Entry*

■ In the present case, the People contend the trial court erred in concluding the evidence discovered after the warrantless police entry into the Mark Avenue house should have been suppressed under the Fourth Amendment, which guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" by police officers and other government officials. Under the Fourth Amendment, " 'searches and seizures inside a home without a warrant are presumptively unreasonable . . . ,' " and " 'absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within.' " (*Groh v. Ramirez* (2004) 540 U.S. 551, 559 [157 L.Ed.2d 1068, 124 S.Ct. 1284].)

■ Although the warrantless entry in this case is presumptively unconstitutional, in order to obtain suppression of the evidence discovered in the Mark Avenue house on Fourth Amendment grounds, defendant had to show he had a reasonable expectation of privacy at the time of the warrantless entry. That is because "[t]he touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy, that is, whether he or she has manifested a subjective expectation of privacy in the object of the challenged search that society is willing to recognize as reasonable. [Citations.]" (*People v. Robles* (2000) 23 Cal.4th 789, 794–795 [97 Cal.Rptr.2d 914, 3 P.3d 311].)[4] Although " '[t]he Fourth Amendment protects people, not places[,]' . . . the extent to which the Fourth Amendment protects people may depend upon where those people are." (*Minnesota v. Carter* (1998) 525 U.S. 83, 88 [142 L.Ed.2d 373, 119 S.Ct. 469]

---

[4] "[T]he United States Supreme Court has largely abandoned use of the word 'standing' in its Fourth Amendment analyses. [Citation.] It did so without altering the nature of the inquiry: whether the defendant, rather than someone else, had a reasonable expectation of privacy in the place searched or the items seized." (*People v. Ayala* (2000) 23 Cal.4th 225, 254, fn. 3 [96 Cal.Rptr.2d 682, 1 P.3d 3].)

(*Carter*).) "The inquiry is substantive in nature, and consists of a subjective and an objective component. '[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; *i. e.*, one that has "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." ' [Citation.]" (*People v. Ayala, supra*, 23 Cal.4th at p. 255; see also *Minnesota v. Olson* (1990) 495 U.S. 91, 95–96 [109 L.Ed.2d 85, 110 S.Ct. 1684] (*Olson*) ["A subjective expectation of privacy is legitimate if it is ' "one that society is prepared to recognize as 'reasonable . . .' " ' [citation]."].)[5]

Fourth Amendment rights are personal and may be asserted only by someone whose own rights have been violated. As explained in *Alderman v. United States* (1969) 394 U.S. 165, 171–172 [22 L.Ed.2d 176, 89 S.Ct. 961], "[t]he established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." (See also *People v. Rivera* (2007) 41 Cal.4th 304, 309, fn. 1 [59 Cal.Rptr.3d 473, 159 P.3d 60] (*Rivera*) ["The 'capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person . . . has a legitimate expectation of privacy in the invaded place.' [Citation.]"].) Accordingly, even if the officers' warrantless entry violated the Fourth Amendment rights of the residents of the Mark Avenue house, defendant could only seek to suppress the evidence if the officers' entry also violated *his* Fourth Amendment rights.

The People do not contend the officers had reasonable suspicion to detain defendant before he fled after seeing the officers emerge from the van. Potts testified that defendant "hadn't done anything until he ran from me."[6] Neither do the People contend the officers had probable cause to arrest defendant at the time they entered the Mark Avenue house; instead, the People contend the officers had probable cause to arrest once Potts observed defendant flushing the suspected cocaine base down the toilet. The People's argument on appeal

---

[5] We use the phrase "legitimate expectation of privacy" to refer to an expectation of privacy that society is prepared to recognize as reasonable. (See *Olson, supra*, 495 U.S. at pp. 95–96; *People v. Robles, supra*, 23 Cal.4th at p. 795.) The phrase "reasonable expectation of privacy" is properly understood as the ultimate determination, reflecting both the objective and subjective components of the analysis.

[6] The parties dispute whether defendant's hurried jog toward the Mark Avenue house constituted "flight" from the police. We need not resolve this dispute, because the People do not contend that any flight provided legal justification for the warrantless entry, and because it is clear that defendant's purpose in turning and hurrying to the house was to avoid the police, regardless of whether his actions constituted "flight."

is that, regardless of the legality of the warrantless entry,[7] defendant's Fourth Amendment rights were not violated because at the time of the search he lacked a reasonable expectation of privacy in the Mark Avenue house. The People argue that any subjective expectation of privacy defendant had at the time was not legitimate (i.e., one that society is prepared to recognize as reasonable), and thus there was no basis to suppress the evidence against defendant under the Fourth Amendment.

Defendant had the burden of establishing he had a reasonable expectation of privacy at the time of the warrantless entry. (*Rivera, supra,* 41 Cal.4th at p. 309, fn. 1.) The magistrate in this case denied defendant's motion to suppress, reasoning "this home was not . . . defendant's home, but the home of a third party who . . . defendant knew. [D]efendant did indeed have permission to enter this home on multiple occasions. [¶] I do not, however, find that he has standing to contest the entry into this house, or an expectation of privacy in the bathroom in light of the facts as listed in this case . . . ." In granting defendant's section 995 motion to set aside the information, the trial court disagreed with the magistrate's conclusion on that issue, stating, "I think that . . . defendant did have a right of standing to challenge the entry into the home and the bathroom . . . ." The facts relevant to defendant's claimed expectation of privacy are essentially undisputed; the determination of whether the facts show that defendant had a legitimate expectation of privacy is an issue of law we review de novo. (*People v. McPeters* (1992) 2 Cal.4th 1148, 1172 [9 Cal.Rptr.2d 834, 832 P.2d 146].)

III. *Defendant Cannot Base His Claim to a Legitimate Expectation of Privacy on the Fact That He Was a Social Guest on Numerous Other Occasions*

*Olson, supra,* 495 U.S. 91 and *Carter, supra,* 525 U.S. 83 are the two seminal United States Supreme Court decisions addressing the question of whether a visitor, such as defendant, has a legitimate expectation of privacy in his or her host's residence. In *Olson,* at page 98, the Supreme Court held that an *overnight* guest had a legitimate expectation of privacy. The court reasoned in part that "[s]taying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society. We stay in others' homes when we travel to a strange city for business or pleasure, when we visit our parents, children, or more distant relatives out of town, when we are in between jobs or homes, or when we house-sit for a friend. We

---

[7] Under the facts of this case, it does not appear that the warrantless entry was permissible under the "hot pursuit" exception to the warrant requirement. (See, e.g., *United States v. Santana* (1976) 427 U.S. 38, 42–43 [49 L.Ed.2d 300, 96 S.Ct. 2406]; *People v. Lloyd* (1989) 216 Cal.App.3d 1425, 1428–1430 [265 Cal.Rptr. 422].) The People do not argue otherwise, nor argue that any other exception to the warrant requirement applies.

will all be hosts and we will all be guests many times in our lives. From either perspective, we think that society recognizes that a houseguest has a legitimate expectation of privacy in his host's home." (*Ibid.*)

In *Carter*, the Supreme Court held that the defendants, who had not been overnight guests, did not have a legitimate expectation of privacy. In that case, the resident of an apartment permitted the defendants to use the apartment to bag cocaine. Law enforcement officials obtained a search warrant after an officer observed the illegal activity by looking through a gap in a closed blind. The defendants moved to suppress the evidence seized during the search of the apartment, arguing that the officer violated the Fourth Amendment by observing them through the gap in the blind. The court concluded that the defendants' Fourth Amendment rights had not been violated, in part because they were in the apartment to conduct a commercial transaction, reasoning: "If we regard the overnight guest in . . . *Olson* as typifying those who may claim the protection of the Fourth Amendment in the home of another, and one merely 'legitimately on the premises' as typifying those who may not do so, the present case is obviously somewhere in between. But the purely commercial nature of the transaction engaged in here, the relatively short period of time on the premises, and the lack of any previous connection between [the defendants] and the householder, all lead us to conclude that [the defendants'] situation is closer to that of one simply permitted on the premises. We therefore hold that any search which may have occurred did not violate their Fourth Amendment rights." (*Carter, supra,* 525 U.S. at p. 91.)

If defendant's first contact with the police on the day in question had occurred *after* their warrantless entry into the Mark Avenue house, this case would be unlike *Carter*, and defendant may well have had a reasonable expectation of privacy in the house. (See *Bonner v. Anderson* (4th Cir. 1996) 81 F.3d 472, 475 [person injured during execution of search warrant at neighbor's home had reasonable expectation of privacy where she was frequent visitor and ran errands for resident of home].) Indeed, five of the justices on the court at the time of the *Carter* decision expressed support for the proposition, as articulated by Justice Kennedy, "that almost all social guests have a legitimate expectation of privacy, and hence protection against unreasonable searches, in their host's home." (*Carter, supra,* 525 U.S. at p. 99 (conc. opn. of Kennedy, J.); see also *id.* at p. 109, fn. 2 (dis. opn. of Ginsburg, J.) ["I think it noteworthy that five Members of the Court would

place under the Fourth Amendment's shield, at least, 'almost all social guests' "]; 6 LaFave, Search and Seizure (4th ed. 2004) § 11.3(b), pp. 151–152.)[8]

However, defendant *did* have contact with the police immediately before entering the Mark Avenue house. Although the regular social calls described by defendant's witness are "a longstanding social custom that serves functions recognized as valuable by society" (*Olson, supra,* 495 U.S. at p. 98), the evidence is unambiguous that the reason for defendant's presence in the house at the time of the warrantless entry was to escape contact with the police. In fact, regardless of whether defendant was intending to go to the Mark Avenue house on the day of his arrest, Potts testified that defendant was walking *away* from the house when the police first observed him; defendant turned around and headed toward the house only after spotting the police officers. Although a regular guest such as defendant may well have a legitimate expectation of privacy during a social visit, that does not mean that society is prepared to recognize as reasonable the privacy expectation defendant claims here: an expectation that his ongoing social relationship with the residents of the Mark Avenue house meant that he could use the house as a sanctuary to escape contact with the police.

In our analysis, it is relevant in assessing the legitimacy of defendant's claimed expectation of privacy that, at the time of the warrantless entry, defendant was not at the Mark Avenue house for a social visit. This is one of the "totality of the circumstances" we utilize in determining whether defendant had a legitimate expectation of privacy (*People v. Tolliver* (2008) 160 Cal.App.4th 1231, 1239 [73 Cal.Rptr.3d 375]); it is not enough simply to consider defendant's connection with the Mark Avenue house in the abstract. Our approach is also supported by a number of decisions that have considered the purpose of a person's presence in assessing the reasonableness of the claimed expectation of privacy. In *Carter, supra,* 525 U.S. at pages 90–91, the court emphasized that the defendants were "present for a business transaction" and that "[p]roperty used for commercial purposes is treated differently for Fourth Amendment purposes from residential property." In

---

[8] Justice Ginsburg, writing in a dissent joined by Justices Stevens and Souter, concluded that a homeowner's invitation provides a guest a reasonable expectation of privacy. (*Carter, supra,* 525 U.S. at p. 108 (dis. opn. of Ginsburg, J.).) In a concurring opinion, Justice Breyer stated his agreement with Justice Ginsburg's conclusion on that issue. (*Id.* at p. 103 (conc. opn. of Breyer, J.).)

The People cite *People v. Cowan* (1994) 31 Cal.App.4th 795, 797, 800 [37 Cal.Rptr.2d 469], in which the court concluded the defendant did not have a legitimate expectation of privacy as a guest at the time of the police entry, even though the defendant was there with the resident's permission and had visited the apartment on prior occasions. In light of the position taken by five justices in *Carter, supra,* 525 U.S. 83, it appears that *Cowan,* decided before *Carter,* may no longer be an accurate statement of the law.

*U.S. v. Gordon* (10th Cir. 1999) 168 F.3d 1222, 1227 (*Gordon*), the court followed *Carter* in concluding that the defendant did not have a legitimate expectation of privacy in another's motel room, because he had been there only a short period of time for the purpose of engaging in an illegal drug transaction. Similarly, in *U.S. v. Flores* (9th Cir. 1999) 172 F.3d 695, 699 (*Flores*), the court concluded the defendant did not have a legitimate expectation of privacy because he was "only present in Apartment 820 to conduct a brief drug transaction." Conversely, in *Bonner v. Anderson, supra*, 81 F.3d at page 475, the court concluded the plaintiff could sue for violation of her Fourth Amendment rights where she was present for the purpose of visiting and running errands for an elderly resident at the time the police entered a house.

■ The defendants in *Carter*, *Gordon*, and *Flores* did not *lose* a legitimate expectation of privacy by engaging in illegal conduct; instead, the defendants did not have a legitimate expectation of privacy because there was no evidence that their presence could be characterized as a social visit. An individual who engages in unlawful conduct in the course of a social visit would not be similarly situated to the defendants in those cases, or to defendant here. (See *Carter, supra*, 525 U.S. at pp. 109–110 (dis. opn. of Ginsburg, J.) ["As the Solicitor General acknowledged, the illegality of the host-guest conduct, the fact that they were partners in crime, would not alter the analysis. . . . If the illegality of the activity made constitutional an otherwise unconstitutional search, such Fourth Amendment protection, reserved for the innocent only, would have little force in regulating police behavior toward either the innocent or the guilty." (citation omitted)]; *People v. Stewart* (2003) 113 Cal.App.4th 242, 253 [6 Cal.Rptr.3d 249] [the defendant had legitimate expectation of privacy even though he had been using premises of another to traffic in illegal narcotics, where he had long-standing social and personal connection to house]; *U.S. v. Washington* (6th Cir. 2009) 573 F.3d 279, 283 ["use of a space for illegal activity does not alter the privacy expectations of a person who would otherwise have standing"]; 6 LaFave, Search and Seizure, *supra*, § 11.3(b), pp. 150–154, 162.) In this case, though defendant might have had a legitimate expectation of privacy had he been paying a social visit when the police entered, he did not have a legitimate expectation of privacy where he entered the house simply to escape their pursuit. The reasons supporting the legitimacy of a social guest's expectation of privacy do not support defendant's claimed expectation of privacy.[9]

---

[9] In *Fraiman v. State, Dept. of Administration, DMV* (Alaska 2002) 49 P.3d 241, 245, the Alaska Supreme Court concluded that a defendant who failed to yield to a state trooper's traffic stop did not have "standing" to move to suppress because he " 'was . . . a person hiding

It is also appropriate to consider the implications of the bright-line rule defendant implicitly proposes: that, where a person has an ongoing social relationship with the residents of a house, the person has a reasonable expectation of privacy whenever present in the house with the permission of the residents.[10] Defendant's proposed rule would be problematic. There would seem to be no limit to the number of residences within which a person could claim a reasonable expectation of privacy. The proposed rule would permit drug dealers to create a network of sanctuaries in the areas where they conduct their illegal business by establishing social relationships and bathroom access privileges at homes in various strategic locations. This outcome would frustrate law enforcement and facilitate illegality, without advancing the "valuable" social customs (*Olson, supra*, 495 U.S. at p. 98) underlying the rationale to recognize as legitimate a social guest's expectation of privacy. Although a social guest's expectation of privacy is generally legitimate, even if he or she is engaging in unlawful conduct during a social visit, we conclude that defendant's claimed expectation of privacy is not one society is prepared to recognize as reasonable. (*Id.* at pp. 95–96.)[11]

---

from the police in someone else's home.' " Although the facts in *Fraiman* are similar to those in the present case, *Fraiman* is of little persuasive value because the decision does not explain the court's reasoning.

[10] In the Fourth Amendment context, the United States Supreme Court has "eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry." (*Ohio v. Robinette* (1996) 519 U.S. 33, 39 [136 L.Ed.2d 347, 117 S.Ct. 417]; see also *Rakas v. Illinois* (1978) 439 U.S. 128, 147–148 [58 L.Ed.2d 387, 99 S.Ct. 421] [rejecting bright-line rule that anyone " 'legitimately on premises' " has reasonable expectation of privacy]; but see *Olson, supra*, 495 U.S. at pp. 98–99 [adopting bright-line rule that overnight guest has reasonable expectation of privacy].) The court explained in *Rakas* that bright-line rules are acceptable "[w]here the factual premises for a rule are so generally prevalent that little would be lost and much would be gained by abandoning case-by-case analysis," but such rules are inappropriate where they conceal underneath a veneer of "superficial clarity . . . all of the problems of line drawing which must be faced in any conscientious effort to apply the Fourth Amendment." (*Rakas*, at p. 147.)

[11] We are not confronted in this case with a Fourth Amendment claim from a person who retreated into a home that is effectively his or her second residence. Relevant considerations would include, for example, that the person possessed a key, had the right to enter when the primary resident was away, sometimes stayed overnight, and kept personal possessions at the home in question. (See *In re Lavoyne M.* (1990) 221 Cal.App.3d 154, 157–158 [270 Cal.Rptr. 394] [assuming minor had "standing" to raise 4th Amend. issue based on his aunt's testimony that he was a part-time resident in the house]; see also *People v. Stewart, supra*, 113 Cal.App.4th at p. 255 [the defendant "essentially used the house as an adjunct to his mobile home, which was located on the same property"].) There is no evidence that any of those indicia exist in this case, so we need not address the legitimacy of an expectation of privacy in that situation.

IV. *Defendant's Presence Inside the Locked Bathroom Does Not Change the Result*

■ It does not change our analysis that the police entered the locked bathroom into which defendant retreated after entering the Mark Avenue house. Although the occupant of a bathroom behind a closed door normally has a heightened expectation of privacy (*Young v. Superior Court* (1976) 57 Cal.App.3d 883, 887 [129 Cal.Rptr. 422]; see also *State v. Smith* (2004) 322 Mont. 466, 470 [97 P.3d 567, 570]), that principle is inapplicable where it is plain the bathroom is not being used for its intended purpose (*State v. Mudloff* (2001) 29 Kan.App.2d 1075, 1077 [36 P.3d 326, 328] ["society will not recognize that expectation as reasonable if the stall's occupant is engaged in activity other than the stall's intended use"]; see also *Mudloff, supra*, 36 P.3d at p. 328 [citing cases]; *State v. Orta* (2003) 264 Wis.2d 765, 781 [663 N.W.2d 358, 366]).

On this issue this case is essentially identical to *State v. Gonzalez* (2004) 32 Kan.App.2d 590 [85 P.3d 711], in which officers entered a motel room and observed the defendant standing at the entrance of an open bathroom door. When the defendant saw the officers, he entered and slammed shut the bathroom door; a police officer entered the bathroom within seconds. The court concluded the defendant did not have a legitimate expectation of privacy, reasoning: "A person legitimately using a bathroom has a reasonable expectation to privacy society would recognize. However, we find the fact that the bathroom door was initially open when the officers entered the motel room, and the fact that the door was shut for only seconds prior to [the officer's] entry, are relevant to the question of [the defendant's] reasonable expectation of privacy inside the bathroom. . . . We do not know whether [the defendant] was attempting to use the bathroom for its intended use, although it requires a degree of naivete to conclude that [the defendant] shut the door at that precise instant because nature was calling. The fact remains [the defendant] did not testify at the suppression hearing and it was his burden to show an expectation of privacy in the property searched. [Citation.]" (*Id.*, 85 P.3d at p. 715.)

As we rejected defendant's claimed expectation of privacy as a social guest because there is no evidence of a nexus between his entry into the Mark Avenue house and a desire to socialize, we also reject defendant's claimed expectation of privacy as an occupant of the bathroom because there is no evidence of a nexus between his presence in the bathroom and the bathroom's intended use.

## V. Conclusion

Because at the time of the warrantless entry defendant did not have a legitimate expectation of privacy in the Mark Avenue house in general or in the locked bathroom in particular, defendant lacked the capacity to move under the Fourth Amendment to suppress the evidence discovered due to the officers' warrantless entry.[12] (*Rivera, supra,* 41 Cal.4th at pp. 308–309, fn. 1.)

## DISPOSITION

The trial court's order of dismissal is reversed and the matter is remanded for further proceedings consistent with this decision.

Jones, P. J., and Needham, J., concurred.

A petition for a rehearing was denied May 5, 2011, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 20, 2011, S193332.

---

[12] Defendant argues for the first time in a petition for rehearing that Potts's act of kicking open the locked bathroom door was a " 'show of . . . authority' " that effected a seizure *before* Potts observed any illegal narcotics. (*United States v. Mendenhall* (1980) 446 U.S. 544, 553 [64 L.Ed.2d 497, 100 S.Ct. 1870].) However, for purposes of the Fourth Amendment, a seizure does not occur where a suspect does not yield to an officer's show of authority. (*California v. Hodari D.* (1991) 499 U.S. 621, 625–626 [113 L.Ed.2d 690, 111 S.Ct. 1547].) Defendant did not yield when Potts kicked down the door; he had to be physically restrained by Potts with the assistance of other officers. Moreover, even assuming Potts's conduct did effect a seizure, that seizure was supported by reasonable suspicion. (See *id.* at p. 623, fn. 1.) In particular, defendant, in a high-crime area known for narcotics trafficking, evaded contact with the police and immediately locked himself in a bathroom. (See *Illinois v. Wardlow* (2000) 528 U.S. 119, 124 [145 L.Ed.2d 570, 120 S.Ct. 673] [reputation of area for narcotics trafficking and suspect's "nervous, evasive behavior" are relevant considerations in determining whether officer had reasonable suspicion].)