Filed 6/12/13  P. v. Sauceda CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E057032 |
| v. | (Super.Ct.No. RIF1201488) |
| CARLOS FRANKIE SAUCEDA, JR., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Helios (Joe) Hernandez, Judge.  Affirmed.

Paul E. Zellerbach, District Attorney, Emily R. Hanks and Natalie M. Pitre, Deputy District Attorneys, for Plaintiff and Appellant.

David L. Polsky, under appointment by the Court of Appeal, and Alison H. Ting, for Defendant and Respondent.

District Attorney (DA) investigators detained defendant, Carlos Frankie Sauceda, Jr., and another man at night in a parking lot in a high-crime neighborhood.  Defendant admitted that he was on parole.  The investigators searched defendant and found a gun in

1

his pocket. The People appeal from the superior court's order setting aside the information under Penal Code section 995[1] after it found the magistrate erred in denying defendant's motion to suppress the evidence obtained as a result of the detention. As discussed below, we find the detention to be unconstitutional and affirm the superior court's ruling.

FACTS AND PROCEDURE

On February 24, 2012, the People filed a complaint charging defendant with unlawful possession of a firearm by a felon (former § 12021, subd. (a)(1)); possession of a loaded firearm in public by an active gang member (former § 12031, subd. (a)(2)(C)); and active participation in a street gang (§ 186.22, subd. (a)). The People alleged defendant had served a prior prison term (§ 667.5, subd. (b)).[2]

Defendant filed a motion to suppress evidence obtained as a result of an unlawful detention (§ 1538.5). On April 30, 2012, the hearing on that motion was held in conjunction with the preliminary hearing before the honorable Judge W. Charles Morgan. The testimony obtained at the hearing is as follows.

Agent Kwan (Kwan), a District Attorney investigator assigned to the Riverside County Regional Gang Task Force, testified. Kwan was familiar with the Riverside gang

---

[1] All section references are to the Penal Code unless otherwise indicated.

[2] On October 13, 2011, the People filed an earlier complaint on these charges, in case No. RIF1105358. The preliminary hearing in that matter was held on December 6, 2011, before the honorable Judge H.A. Staley. Defendant was held to answer. On February 21, 2012, the honorable Judge W. Charles Morgan heard and granted a section 1538.5 motion to suppress the evidence. The People then dismissed the case and refiled it on February 24, 2012, under its current case No. RIF201488.

2

called the East Side Riva (ESR), but would not recognize each of its more than 500 members. He was also familiar with the ESR Gang Injunction (injunction), which made it illegal for these gang members to associate with each other within an area known as the "ESR safety zone." The market at the corner of Victoria Avenue and 11th Street (market) falls within this area. Kwan was aware that ESR gang members had committed the crime of graffiti on the walls surrounding the parking lot of this market and that calls for police response had been made because of gang members hanging out "right next to" the market yelling out their gang name at passing cars.

At about 8:50 p.m. on October 7, 2011, Kwan and Agent Webber (Webber), also a DA investigator, drove past the market on Victoria Avenue. The market has its own parking lot in the back, which is bordered by block walls. Kwan saw three people sitting on one of the block walls. No cars were present. The parking lot was dimly lit by a light on a pole. Kwan could not see the men's faces. Each of the men was wearing "baggy clothing and hooded sweatshirts." One of the men in a light-colored sweatshirt had the hood on his head. Of the three, one was wearing "dark clothing" and the other two were wearing light clothing.[3, 4] Kwan "made a u-turn to come back to try to contact them to see what they were doing in the back of the parking lot."

---

[3] The man whom the agents believe later jumped over the wall was wearing dark clothing. Defendant was wearing a light-colored hoodie. The other man arrested was wearing a light-colored hoodie and gray pants.

[4] Kwan in his testimony emphasized that part of the reason he and Webber decided to investigate was because the men were in the back parking lot without a car, in a high-crime area subject to an anti-gang injunction, and "wearing dark clothes/clothing."

3

At that point in the hearing, the People introduced as People's Exhibit, a photograph of the parking lot area showing the walls.[5] The photograph had not been shown at the suppression hearing held in the previously-filed case. Kwan testified that the men were sitting at the point where the two walls converged, and that the driveway on Victoria Avenue was the only way to enter or exit the parking lot.

Kwan testified that, after he and Webber made the u-turn, they parked "out of sight." They got out of the car and walked toward the parking lot along one of the walls, using the wall as "concealment." When they turned the corner of the wall to the parking lot, they saw two of the men walking across the parking lot toward Victoria Avenue. The men were walking in the middle of the parking lot, moving "diagonally" in a direction mostly away from the agents and toward the market.

Kwan testified that they had two reasons for approaching the men to see what they were doing in the parking lot without a car. First, they wanted to contact them to see if they were gang members who were congregating in the ESR safety zone, which was prohibited by the injunction. Second, they wanted to determine whether a crime was happening or about to happen, such as spraying graffiti or robbing the market.

The agents' suspicions were heightened by the absence of the third person, because it was not usual for a person to leave an area as they approached unless that person had committed a crime or was in violation of the injunction. Agent Kwan testified

_____

[5] In response to the magistrate's question as to the wall's approximate height, Kwan stated "I'd guess between seven and eight feet." The superior court later opined from looking at the photograph that it "looked to me like a six-foot concrete block wall. Maybe it's eight feet."

4

that they "had an officer safety issue with the third person leaving . . . . [¶] . . . [¶] I'm surrounded by a block wall. I don't know which direction he is or which way he went."

Kwan told the two men to "'Come here.'" At the first command, the man other than defendant turned around toward the agents. At that point, Kwan recognized the man as an ESR associate, not a gang member, from three or four previous contacts with him. Normally, when Kwan contacted this man, or other ESR associates, they were with other ESR members or associates. Defendant continued to walk away. Defendant stopped after the agents' third command to "come here" in a loud voice. Kwan did not recognize defendant but noticed he had a hood pulled over his head and a tattoo on his face.

Webber contacted defendant, while Kwan contacted the other man, and asked him whether he was on parole or probation. Defendant said he was on parole. Webber searched defendant and found a loaded handgun in his pocket.

At the close of the hearing, the magistrate denied the suppression motion and found sufficient probable cause to proceed to trial. The magistrate reasoned: "I don't think this rests on gangs. I think this rests on three guys in the corner in an area that has an elevated crime rate, with no good business, in a corner in a dim parking lot with no vehicles."[6]

On May 11, 2012, the People filed an information alleging the same crimes as charged in the earlier complaint. Defendant filed a motion to dismiss the information

---

[6] The magistrate also commented that he found it "illuminating" to see the photograph of the parking area, which the People did not introduce in the suppression hearing in the previously-filed case, because it showed more accurately where the men were in relation to the market.

pursuant to sections 995 and 1538.5 on the ground the magistrate erred in denying defendant's motion to suppress. On June 27, 2012, after hearing argument from the parties and reviewing the papers and transcripts, the superior court granted the motion to suppress. The court reasoned that the investigators had no articulable suspicion that the men might be gang members (and so in violation of the gang injunction) until after they stopped the men, and no articulable suspicion that the men were "casing" the market, that is, intending to rob it if open or burglarize it if closed. "The officer just sees somebody that's, to him, the usual suspects, and he decided to shake him down but doesn't have a reason, and the reason doesn't really develop after he stops him. He just assumes they're gang members because they're on the east side. And that's a little broad." The court dismissed the information. This appeal followed.

## DISCUSSION

The People contend the superior court erred when it granted defendant's motion to dismiss pursuant to sections 995 and 1538.5 on the ground that the only evidence offered at the preliminary hearing in support of the charges must be suppressed because it was obtained pursuant to an unlawful detention. Specifically, the People argue the detention was supported by reasonable suspicion that defendant and his companions were involved in criminal activity, based on their presence in a high-crime area at night, their suspicious behavior in the parking lot, and the fact that they attempted to leave the parking lot after the agents drove by. Thus, the People argue, suppression of the evidence was not warranted. Defendant argues the detention was unlawful because these factors, whether considered separately or in conjunction with each other, do not justify detaining the men.

6

As discussed below, we conclude that the relevant case law is fairly clear that the defendant's mere presence at that location at that time of night, even assuming he attempted to avoid contact with the investigators, do not justify the detention.

On appeal from the granting of a defendant's section 995 review in the superior court of the magistrate's denial of a motion to suppress, the appellate court directly reviews the determination of the magistrate. We must uphold the magistrate's findings of fact if supported by substantial evidence, but independently determine whether the search or seizure was reasonable as a matter of law. (*People v. McDonald* (2006) 137 Cal.App.4th 521, 528; *People v. Magee* (2011) 194 Cal.App.4th 178, 182-183.)

"California law requires that the reasonableness of searches and seizures undertaken by the police be reviewed under federal constitutional standards. [Citation.]" (*People v. Hochstraser* (2009) 178 Cal.App.4th 883, 894.)

"A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 (*Souza*).)

The facts found by the magistrate at the suppression hearing are as follows. After discounting the existence of the gang injunction as a possible justification for the detention, the magistrate cited the following facts: "I think this rests on three guys in the corner in an area that has an elevated crime rate, with no good business, in a corner in a dim parking lot with no vehicles . . . ." The magistrate also referred to the absence of the third person: "And I think it's justified for a peace officer to make contact with those

7

three. Then it turns out there's only two of them and one, reasonably, in leaving the area, went over the wall. That's not how you go home or that's not how you get to your car or that's not how you—whatever." In other words, the magistrate concluded that, as a matter of law, the presence of the men in that parking lot at that time of night with no car subjected them to being detained. In the magistrate's view, the fact that one of the men left the area, presumably over the wall, was an additional factor but not a necessary one.

Next, we review the cases cited by the parties and/or courts below that we find most factually similar to the case at hand. In *In re Tony C.* (1978) 21 Cal.3d 888, a police officer stopped and detained two male minors who were walking down a public street in a high crime area during school hours. The officer was aware that three males of the same ethnic background as these two minors were wanted in connection with a recent string of burglaries in the area. The officer drove past the minors, pulled a u-turn, and then on the second pass noticed that only one of the minors was still on the sidewalk. The officer suspected the one minor might be acting as a lookout while the other was committing a burglary nearby. The officer stopped both boys and found stolen property on one of them. The Supreme Court found the stop to be unreasonable and ordered the evidence found to be suppressed. " . . . [I]t is not reasonable to suspect, as did [the officer] that any minor who is proceeding along a public street during school hours is ipso facto bent on committing crimes." (*Id.* at p. 897.) Further, although the court acknowledged case law according some "weight to the fact that the stop or detention took place in a 'high crime area' [citation] . . . this fact alone should not be deemed sufficient to support the intrusion. A day-old burglary report does not transform a residential

8

neighborhood into a no man's land in which any passerby is fair game for a roving police interrogation: 'To hold that police officers should in the proper discharge of their duties detain and question all persons in that location . . . would for practical purposes involve an abrogation of the rule requiring substantial circumstances to justify the detention and questioning of persons on the street.' [Citations.] (*Ibid*.)

Here, Agent Kwan justified the detention of defendant and his companion based on their presence in a particular location after dark, without any reasonable suspicion based on their specific actions. Again, we quote from the magistrate's factual findings: "I think this rests on three guys in the corner in an area that has an elevated crime rate, with no good business, in a corner in a dim parking lot with no vehicles." In favor of the magistrate's ruling is that, unlike in *Tony C.*, defendant and his companions were sitting on the back wall of a parking lot at night rather than walking along a public street during daylight hours. In opposition to the magistrate's ruling is that, unlike in *Tony C.*, the arresting officers here did not have information about any specific crimes of which they suspected defendant and his companions.

In *Souza,* the defendant and another person were standing on a sidewalk in a high crime residential area at 3:00 a.m. The defendant was leaning into a car parked on the street in nearly total darkness (the street lights were not working), talking with the car's occupants. The officer parked behind the car and shined his patrol car's spotlight on the group. The occupants of the car ducked down below window height and the defendant took off running. The officer pursued and detained the defendant and found cocaine on his person during a routine pat down for weapons. The Supreme Court concluded that,

9

under the totality of the circumstances known to the officer, the detention was legal.  This was because of the following facts:  "[T]he area's reputation for criminal activity, the presence of two people near a parked car very late at night and in total darkness, and evasive conduct not only by [the] defendant but by the two occupants of the parked car . . . ." (*Souza, supra,* 9 Cal.4th 224 at p. 240.)  The court cited to other cases specifically endorsing the following facts as suspicious, though not necessarily sufficient by themselves to justify detention.  First is the area's reputation for criminal activity. " . . . mere presence in a high crime area is not, standing alone, 'sufficient to justify interference with an otherwise innocent-appearing citizen . . . [however] we must allow . . . [peace officers] . . . to give appropriate consideration to their surroundings and to draw rational inferences therefrom . . . .' [Citation.]" (*Id.* at p. 241.)  Second is the time of night.  "'Three a.m. . . . is both a late and an unusual hour for anyone to be in attendance at an outdoor social gathering. . . . '" (*Ibid.*)  Here, as in *Souza,* defendant and the other two men were in a high-crime area after dark.  However, the time was 8:50 p.m. rather than 3:00 a.m., the parking lot was lit, if dimly, by a light on a lamp post, the men were not doing much of anything, and it is not clear whether defendant was "fleeing" at all.  We find these facts to be, if not quite as innocuous as those in *In re Tony C.,* very similar to those in *People v. Aldridge* (1984) 35 Cal.3d 473 (*Aldridge*), which the *Souza* court examines for its dissimilarity to the *Souza* facts.

In *Aldridge,* the three factors cited by the People to justify a detention were that it was nighttime, the detention took place in the parking lot of a liquor store known for "continuous drug transactions," and that, when the police car entered the parking lot, the

10

defendant and his companions slowly disbursed, walking away and eventually running to avoid contact with police. These factors are functionally identical to those cited by the People in the current case. In holding that the detention did not comply with the Fourth Amendment, our Supreme Court stated that "Whether considered separately or together, these factors do not justify the detention. First, being in the area of a liquor store at 10:15 p.m. . . . is neither unusual or suspicious. [Citation.] Next, we have explained that persons may not be subjected to invasions of privacy merely because they are in or passing through a 'high crime area.' [Citations.] . . . A history of past criminal activity in a locality does not justify suspension of the constitutional rights of everyone, or anyone, who may subsequently be in that locality." (*Aldridge*, *supra*, 35 Cal.3d at pp. 478-479.)

For the same reasons, defendant's mere presence in a parking lot in a high crime area at 8:50 p.m. with two other men, even if we presume that he attempted to avoid contact with law enforcement, does not justify the detention. Defendant had the right to sit on a wall with two other people behind a local market, even at night, without being seized by law enforcement. He had a right to walk out of that parking lot and away from the investigators if he so desired. Therefore, the search was unconstitutional, defendant's motion to suppress should have been granted and the case should have been dismissed.

11

**DISPOSITION**

The superior court's ruling granting the suppression motion and dismissing the

case under section 995 is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
                                                                    P. J.


We concur:

HOLLENHORST_____
                    J.

RICHLI_____
                    J.

12